**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

C.K. LEE,
*on behalf of himself and all others similarly situated,*

Plaintiff,

-against-

TOWN OF CAIRO,
TANJA SIRAGO,
*individually and in her capacity as Town Justice,*
ANGELA NEMIER,
*individually and in her capacity as Town Court Clerk and Justice Court Office Administrator*

Defendants.

Case No.: 1:26-cv-531 (AMN/DJS)

**VERIFIED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, C.K. Lee ("Plaintiff"), on behalf of all others similarly situated, by and through his undersigned attorneys, hereby files this Class Action Complaint pursuant to 42 U.S.C. 1983 and against Defendants TOWN OF CAIRO, TANJA SIRAGO, and ANGELA NEMIER ("Defendants") and states as follows:

## NATURE OF THE ACTION

1. Plaintiff C.K. Lee brings this class action against Defendants for needlessly requiring individuals to appear in Cairo Town Court in-person (rather than virtually) for non-criminal traffic violations, without regard to the distance from their homes, thereby depriving them of their constitutional right to due process.

2. Plaintiff brings this class action under 42 U.S. Code § 1983 for violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

3. Plaintiff seeks injunctive relief, monetary relief, declaratory relief, and attorneys' fees and costs.

## PARTIES

4. Plaintiff is and at all relevant times has been a resident of New York County, New York. Plaintiff works full time, has aging parents, and is the father of two minor children.

5. Defendant Town of Cairo is a town within Greene County, New York. Its primary address is 512 Main Street, Cairo, NY 12413.

6. Defendant Tanja Sirago is the Town Justice of the Cairo Town Court.

7. Defendant Angela Nemier is the Town Court Clerk and Justice Court Office Administrator of the Cairo Town Court.

8. Plaintiff is suing Defendants Sirago and Nemier both individually and in their official capacity as Cairo town administrators.

## JURISDICTION AND VENUE

9. This action arises under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §§ 1983 and 1988. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. § 1331.

10. Venue is proper in the Northern District pursuant to 28 U.S.C. § 1391 because the events giving rise to this action transpired in this District.

## STATEMENT OF LAW AND FACTS

11. This class action seeks to put an end to systemic civil rights violations committed by Defendants.

12. Defendants are required under the Constitution of the United States to guarantee due process of law to motorists summoned to appear before Cairo Town Court for traffic violations. This means "'an *opportunity* . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (emphasis added by court) (citations omitted).

13. Defendants' policy of requiring in-person hearings for non-criminal traffic violations when remote hearings through video conferencing would be virtually costless and easily administrated deprived Plaintiff and Class members of such an opportunity.

14. Cairo, NY is located near a number of Catskills recreational venues and is en route to many others in Upstate New York. Cairo's status as a tourist destination is specifically noted on the Cairo Town Court's website, which states, "Tourism has been Cairo's largest industry since the 1800's. It was one of the first towns in the area to develop ski slopes and trails. Many of the regular visitors have made the conversion to seasonal or permanent residents." **Exhibit A**.

15. This means that a large number of those summoned to appear before Cairo Town Court for non-criminal traffic citations will be from out of town and face significant difficulties travelling back to Cairo for their court appearances. One local law firm, Esslie & Frenia, P.C. highlights this fact in marketing its services:

> Many people are cited for moving violations while on vacation in the Catskills. Charges in New York state can affect them in their home states. Even worse, handling the matter while living out of town can be a burden. It forces them to choose between admitting guilt or travelling all the way back to the local Court to defend themselves.
>
> At Esslie & Frenia, P.C., we can help. Our lawyers have the capacity to represent people in local courts. Often, it is possible for us to appear on their behalf and defend them against the charges they face, without requiring them to be in attendance.

**Exhibit B**

16. Like many other out-of-town motorists, Plaintiff was placed in the very Catch-22 described by Esslie & Frenia.

17. In January 2026, Plaintiff was passing through Cairo, headed north. When he glanced at his rearview mirror, Plaintiff noticed a police car immediately behind him, signaling him to pull over. Once Plaintiff pulled over, he was issued a $200.00 ticket for violating Vehicle & Traffic Law § 1111(d)-1.

18. Plaintiff pleaded not guilty by mail and, soon thereafter, received a letter from Defendant Sirago, dated January 28, 2026, ordering him to appear before the court in-person for a pre-trial conference on February 24, 2026. Another notice, dated February 9, 2026, adjourned the conference to April 7, 2026. Both notices stressed that "this is NOT a trial date." *See* **Exhibit C.**

19. Plaintiff wrote to the Court on February 27, 2026, to request that the court hold the pre-trial conference virtually. *See* **Exhibit D**. Plaintiff's letter emphasized that appearing in-person for the conference would "impose a significant financial and logistical burden" given that he lives in New York city. Plaintiff explained that (a) his total travel time to and from the conference would be at least five (5) hours, and (b) the financial and personal costs associated with travel, including time away from work and family, would outweigh the cost of paying the ticket. Plaintiff explained that, for these reasons, "[a] virtual appearance would allow the Court to proceed efficiently while avoiding unnecessary hardship."

20. Defendants denied Plaintiff's request, however, in disregard of the substantial burdens and costs that their inflexible in-person appearance requirement would impose on the exercise of his right to contest a minor, non-criminal traffic violation. Defendants effectively backed Plaintiff into a corner, presenting him with the choice of either forfeiting his right to

challenge a $200 ticket or incurring the significant costs of travelling to Cairo *twice*, first for the pre-trial conference and then for the trial itself.

21. Notably, the Cairo Town Court has stated that there are "no exceptions" to the in-person appearance requirement. **Exhibit A**.

22. No doubt, these policies contribute to the financial health of the Cairo town government. Tourism is the town's biggest industry, and requiring out-of-town tourists to travel back to Cairo *twice* to contest simple traffic tickets has surely forced many of them to just pay the fine and move one, thus filling Cairo's coffers with yet another source of out-of-town revenue. While law firms such Esslie & Frenia offer to help with this problem by appearing on behalf of the accused, the cost of retaining a local traffic attorney will, in most cases, vastly exceed the cost of the traffic ticket itself. Moreover, local counsel cannot substitute for an appearance by the accused in the large number of cases where contesting the ticket requires their testimony, as is the case here.

23. Though financially wise from Cairo's perspective, the inflexible in-person appearance requirement for minor, non-criminal traffic violations infringes on the due process requirements of the Fourteenth Amendment.

24. In requesting a virtual conference, Plaintiff was seeking to vindicate his due process rights, not asking for some idiosyncratic accommodation that would be unduly burdensome to provide. Remote video conferencing has now been with us for decades. Skype was introduced already in 2003. Zoom Meetings was introduced in 2013 and Microsoft Teams was introduced in 2017. The advent of smart phones in 2007 has made these applications particularly convenient. Their use became widespread during the Covid-19 Pandemic, including for adjudicating traffic tickets, and they remain in widespread use today in business, government,

and law. Courts now routinely conduct virtual hearings. The Ninth Circuit's Ad Hoc Committee on Cameras in the Courtroom found widespread enthusiasm for virtual hearings among judges, finding that nearly 100% of the courts that responded to its survey used videoconferencing, with some supporting its use for *jury trials*, which are vastly more complex affairs than simple traffic court hearings. *See* **Exhibit E**.

25. Indeed, the New York Department of Motor Vehicles, which administers the traffic courts within New York City, has implemented a virtual appearance option for traffic violations, offering alleged violators an easy portal through which to submit evidence and then make their case. *See* **Exhibit F**. And unlike Cairo's Town Court, the DMV manages to adjudicate traffic citations in one sitting, without requiring accused violators to first appear for a pre-trial conference.

26. Of course, the Town of Cairo may not wish to develop its own app for virtual hearings. But there are many inexpensive commercial options available. Systems like Zoom allow users to upload evidence as exhibits, which is why they are routinely used to conduct depositions.

27. Perhaps due process did not require the right to appear virtually for traffic citations when videoconferencing technology was still in its infancy and not in widespread use. However, "[w]hat is due process depends on the circumstances and it varies with the subject matter and necessities of the situation." *Kritsky v. McGinnis*, 313 F. Supp. 1247, 1250 (N.D.N.Y. 1970) (citing *Moyer v. Peabody*, 212 U.S. 78, 84 (1909)). One of these circumstances is changes in technology:

> Due process requires the courts to adjust to changing technology. The meaning of the Constitution may remain the same but its manifestations and impact vary with time. Though the framers could not have conceived of the technique, electronic eavesdropping must be accounted for. A prisoner is entitled to today's modern

> medical treatment, not what may have been available at the time the Constitution was adopted, or even what may have been acceptable a decade ago. Witnesses are deemed available when they can be carried by aircraft rapidly from long distances; notice by telephone or telegraph rather than by the method used by Paul Revere is expected. So, too, where the technique of chains, irons and gags might have been the only one available when the Bill of Rights was written, we take judicial notice that more effective and less prejudicial means are now at hand. At any given time, *the process that is due defendants must be a function of the rapidly evolving technology that is contemporaneously available*.

*United States ex rel. Boothe v. Superintendent*, 506 F. Supp. 1337, 1344 (E.D.N.Y. 1981) (emphasis added) (citations omitted)

28. In-person appearance requirements for simple traffic offenses "may have been acceptable a decade ago" before videoconferencing became widespread, but the technology is now commonplace and used by everyone in one way or another. Requiring accused traffic violators to appear in-person for hearings is now no more justified than requiring them to appear in-person to request an adjournment, enter a plea, or ask a question, given the availability of email, the telephone, and the U.S. Postal Service—even though these means of communications may have been unavailable on the western frontier in the Nineteenth Century.

29. Defendants may argue that, at the end of the day, Plaintiff is not being physically prevented from travelling to Cairo (twice) to appear in-person and that whether to do so is ultimately his choice. But given the circumstances described, the choice is an illusory one, and Due Process requires more than the formal freedom to make illusory choices. "Just as a generally valid notice procedure may fail to satisfy due process because of the circumstances of the defendant, so too a cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard. The State's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the State owes to each individual that process which, in light of the values of a free society, can be characterized as due." *Boddie*, 401 U.S. at 380.

30. The Catch-22 that Defendants impose on Plaintiff and Class members is inconsistent with the values of a free society. While even a free society must unavoidably constrain the freedom of individuals, it may not do so gratuitously when it possesses the technological wherewithal to avoid this.

31. Here, the only possible rationale for the in-person appearance requirement is that it makes it more likely that accused violators will decide to plead guilty and pay the ticket instead of making two long trips back to Cairo to contest it. This is inconsistent with due process.

## CLASS ACTION ALLEGATIONS

32. Plaintiff seeks certification of the following nationwide Class for monetary relief, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure: "All individuals in the United States who, during the relevant statutory period, (a) were charged with non-criminal traffic violations under the jurisdiction of Cairo Town Court and (b) paid the fine without going through a hearing" ("Monetary Relief Class").

33. Plaintiff also seeks certification of an injunctive relief class under 23(b)(2) consisting of "All individuals in the United States who were charged with non-criminal traffic violations under the jurisdiction of Cairo Town Court" ("Injunctive Relief Class").

34. Thousands of Americans drive in or through Cairo every year. Thus, the Class is so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action benefits both them and the judicial system.

35. There are questions of law and fact common to the Class that predominate over any individual questions, including without limitation, the following:

(a) Whether Defendants' failure to permit virtual appearances as an option for

individuals charged with non-criminal traffic violations deprives these individuals of their right to due process under the Fourteenth Amendment.

(b) Whether Defendants' in-person only policy unlawfully restricts access to the traffic courts by imposing unreasonable financial, logistical, or geographic barriers on cited motorists.

36. The claims of Plaintiff are typical of those of Class Members. Like Plaintiff, Class Members are non-resident motorists who drove through Cairo and were denied proper procedural due process.

37. Plaintiff will fairly and adequately represent and protect the interests of Class members because Plaintiff has retained competent counsel that is experienced in complex class action litigation. Plaintiff has no interests antagonistic to those of other Class members.

38. Class certification is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

39. Plaintiff seeks disgorgement of fines paid by the Monetary Relief Class. For the Injunctive Relief Class, Plaintiff seeks an order requiring Defendants to make remote hearings available as an option for all individuals in receipt of a non-criminal traffic citation.

40. Judicial economy will be served by maintenance of this lawsuit as a class action in that this will prevent burdens that would otherwise be placed upon the judicial system by the filing of numerous similar suits by other visitors of Cairo.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violation of the Due Process Clause of the Fourteenth Amendment, with Application for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction**
**(42 U.S.C. § 1983)**
***(brought on behalf of Plaintiff and the Class)***

41. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein and further alleges as follows:

42. The Fourteenth Amendment guarantees due process before a person may be deprived of liberty or property interests by the State, including (i) the right of access to courts, (ii) the financial interest in avoiding unjust fines or penalties, and (iii) the freedom to travel and manage personal and family without undue government interference.

43. Defendants' in-person appearance policy for non-criminal traffic citations unconstitutionally impairs these interests.

44. Defendants are subject to the Fourteenth Amendment because they are agents of the State of New York.

45. Plaintiff had a protected interest in contesting his ticket through meaningful access to the courts, including access that does not impose unreasonable travel, financial, or logistical burdens.

46. Defendants have unconstitutionally impaired this interest.

47. Plaintiff was denied meaningful opportunity to be heard. By refusing to hold hearings remotely, Defendants failed to provide Plaintiff the genuine opportunity to contest his charge. Class Members were similarly deprived of the opportunity to contest their charges.

48. When Defendants' barriers to due process were brought to their attention by Plaintiff, they refused to take any steps to remove them.

49. Defendants will continue in the future to deny Plaintiff and other similarly situated individuals due process in violation of the Fourteenth Amendment.

50. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiff and Class Members will continue to suffer irreparable harm.

51. The Court should order Defendants to provide Class members with refunds for fines leveled against them without their having gone through a hearing.

52. The Court should enjoin Defendants' policy of requiring in-person appearances for non-criminal traffic citations.

53. The Court should issue a temporary restraining order and preliminary injunction (a) barring Defendants from continuing with any proceedings against Plaintiff for traffic citation S260110183 during the pendency of this action and (b) vacating or suspending any default judgment against Plaintiff arising from his non-appearance at any in-person hearing.

54. Defendants may be properly sued under 42 U.S.C. § 1983 because, even if they are judicial officers, their decision to bar virtual appearance for non-criminal traffic violations was an administrative decision rather than a judicial one.

55. "It is well established that a judicial officer acting in his judicial capacity has absolute immunity against actions under 42 U.S.C. § 1983." *Anderson v. Montague*, 2006 U.S. Dist. LEXIS 61355, at *2-3 (S.D.N.Y. Aug. 25, 2006). However, "a judge's '[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not [] been regarded as judicial acts.'" *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (quoting Forrester v. White, 484 U.S. 219, 288 (1988)). "Whether the act [] was judicial or not is to be determined by its character, and not by the character of the agent." *Forrester v. White*, 484 U.S. 219, 228 (1988) (internal quotes and citation omitted). Courts therefore undertake a "functional analysis" of

whether an act is judicial in nature, and "the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d at 210. Thus, administrative decisions such as "demoting or dismissing a court employee and compiling general jury lists to affect all future trials," are not judicial acts and would not enjoy immunity. *Id*. (internal citations omitted).

56. Here, Defendants' decision to disallow virtual appearances for non-criminal traffic citations cannot be considered a judicial act. As shown by the Town Court's webpage, see **Exhibit A**, this is a general policy applying to all citations and has nothing to do with the merits or posture of Plaintiff's particular case. Accordingly, the policy does not "aris[e] out of, or relate[] to, individual cases before the judge." *Id*. To be sure, the policy will *affect* individual cases (for reasons already described), but so, too, does "compiling general jury lists to affect all future trials." *Id*. Yet courts have determined that the latter does not qualify as a judicial act.

57. That the decision to disallow virtual appearances for traffic tickets is not a judicial act is illustrated by the New York Department of Motor Vehicle's opposite decision to facilitate such appearances. As shown in **Exhibit G**, the DMV issued a press release announcing its new virtual appearance policy. **Exhibit G** also contains a press release from the Black, Puerto Rican, Hispanic & Asian Legislative Caucus showing that the DMV consulted with it regarding the policy's implementation. Judicial acts are not announced through press releases or initiated only after dialogue with community stakeholders. So, the DMV's decision to permit virtual appearances cannot be deemed an official act. Correlatively, the Cairo Town Court's opposite decision to disallow virtual appearances also cannot be considered a judicial act. Accordingly, Defendants' enjoy no judicial immunity with respect to this lawsuit.

58. Plaintiff is entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

a. A declaration that Defendants' in-person appearance requirement for individuals cited for non-criminal traffic infractions violates the Due Process Clause of the Fourteenth Amendment;

b. A temporary restraining order and preliminary injunction requiring Defendants to suspend the current legal proceedings against Plaintiff, including any default judgments already entered, pending the outcome of this case;

c. An order certifying this case as a class action under Fed. R. Civ. P. 23(b)(3) and 23(b)(2) and appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

d. Damages to Monetary Relief Class members consisting of refunds of all fines paid to Cairo Town Court for non-criminal traffic infractions without a prior hearing;

e. A permanent injunction requiring Defendants to make remote hearings available as an option for motorists cited for non-criminal traffic infractions;

f. Plaintiff's reasonable attorneys' fees, expenses, and costs under 42 U.S.C. § 1988 and other applicable law;

g. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

DATED: April 2, 2026

*/s/ Rony Guldmann*
Rony Guldmann

LEE LITIGATION GROUP, PLLC
Rony Guldmann
148 W 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-661-0052
Fax: 212-465-1181
rony@leelitigation.com
*Attorneys for Plaintiff and the Class*

## COMPLAINT VERIFICATION

I, C.K. Lee, am the Plaintiff in the foregoing complaint and have personal knowledge of the facts alleged therein. I declare under penalty of perjury that these facts are true to the best of my knowledge.

C.K. Lee

Dated: April 1, 2026